### 6315. COPELAND *v.* WHITE.

1. The motion to dismiss from consideration by this court the exceptions preserved by the exceptions pendente lite must be overruled, since it appears, from the date of the certificate of the trial judge, that the exceptions were presented in time.
2. The court erred in overruling the motion to strike the defendant's plea. The counter-claim of the defendant was for unliquidated damages on account of tortious acts of the plaintiff in two distinct transactions which are fully detailed in the pleadings. Even if the allegations of the answer be considered as a plea of recoupment, it plainly appears from them that any damage suffered by the defendant arose from the plaintiff's breach of a contract subsequent to that upon which the suit

was based. The suit was upon a note. The defendant's damage was alleged to have been caused by the plaintiff's breach of his undertaking to accept certain property in payment of the note, under the terms of a later contract, which, as appears from the allegations of the answer, was made by the plaintiff several months after the execution of the note, and inferentially after its maturity.

3. In view of the error pointed out in the preceding headnote, the further proceedings in the trial were nugatory.

DECIDED FEBRUARY 3, 1916.

Complaint; from city court of Cairo—Judge Singletary. December 24, 1914.

*M. L. Ledford,* for plaintiff.    *Bell & Weathers,* for defendant.

RUSSELL, C. J.    1. The defendant in error makes a motion that the exceptions pendente lite appearing in the record be not considered by this court, because it does not appear that they were certified in time.    It is true that the exceptions as presented by plaintiff's counsel in the lower court are not dated, but the certificate of the trial judge is dated, and from this it appears that the exceptions were certified and ordered filed before the adjournment of the court at which the case was tried.    This motion, therefore, must be overruled.

2.    The suit was on a promissory note dated September 2, 1911, and due September 2, 1912.    The defendant admitted the execution of the note and that the plaintiff was entitled to maintain the suit, and that the note had not been paid, except as thereinafter set out in the answer.    After detailing the plaintiff's indebtedness to him upon counter-claim, the defendant asked a judgment in his favor for the excess of the counter-claim.    The defendant alleged that the plaintiff wished to buy a certain house and lot, which the defendant was entitled to occupy rent free for the years 1912, 1913, and 1914, as a part of the pay for the defendant's services in building the house for one Donalson, and that "sometime in the summer of 1912" the plaintiff approached him and it was agreed between them that if the defendant would pay Donalson $55 and get a bond for title to the house and lot, and by the first of January, 1914, would pay the remainder of the purchase-price of $167.50 to Donalson, the plaintiff would surrender the note, fully paid, to the defendant, and pay the defendant the difference between the amount of the note and $167.50.    The defendant, in pursuance of the conversation with the plaintiff, purchased the premises from Donalson, giving him a note payable

January 1, 1913, for the $55, and the remainder was to be payable January 1, 1914. In December, 1912, the plaintiff repudiated his agreement, according to the allegations of the answer, and the defendant alleges that he could do nothing better than to surrender to Donalson his bond for title, in exchange for his two notes, since his purchase of the house was made only for the use of the plaintiff, and thereby he lost his right to the use of the house for the remainder of his rent-free term. As a result it is alleged that he lost $96, the rent value of the house for the years 1913 and 1914 at $4 per month, and it is sought to recoup or set off this sum against the note. The note in suit contained a mortgage upon a mule, and it is further alleged in the answer that the plaintiff, after repudiating his agreement relative to the purchase of the property as above set out, foreclosed the mortgage on the mule, which was worth $100, and that the mule brought only $12 at the sale, and thereby the defendant was damaged in the additional sum of $88; and judgment is asked for the balance of this sum remaining after such part of the same as is necessary, in addition to the $96, to extinguish the note has been applied thereto. The plaintiff made a written motion to strike the defendant's plea, upon the ground that it was not a good plea of recoupment, because the damages were unliquidated and arose from a contract entirely distinct and independent from the terms of that which was the basis of the note sued on.

We think the motion to strike the plea should have been sustained. The action upon the note was ex contractu. The defendant's plea set forth an action ex delicto. As a general rule, demands arising ex delicto can not be set off to an action ex contractu. The right to recoup is in a sense an exception to this rule, and by recoupment the defendant may set off damages arising from the contract which is the basis of the suit. The allegations of the answer set forth a distinct contract between the plaintiff and the defendant in relation to the purchase of the house, by which the plaintiff agreed to extend the time of payment originally fixed in the note and to pay the defendant a specified sum of money in addition to the amount called for by the note, in consideration of the defendant's services in purchasing and paying for certain real estate. The original contract by which the defendant bound himself to pay the amount stipulated in the note

was absolutely complete upon the execution and delivery of that paper. That contract called only for the payment of a certain amount of money to the holder of the note on a day specified. Under the contract set forth in the answer, the ·defendant was to pay two specified sums of money to Donalson and obtain for the plaintiff a designated piece of property, and, upon compliance with this undertaking, the plaintiff was to surrender the note to the defendant and pay the defendant the overplus. Viewed in the light most favorable to the defendant, his statement worked a novation of the original contract embodied in the note, which required him to allege full compliance on his part with his undertaking under the contract as altered by the subsequent agreement. And yet, according to the answer, the defendant did not pay Donalson the $55 to obtain the bond for title, but instead gave him a note payable January 1, 1913. And when the plaintiff, in December, 1912, as alleged, repudiated his agreement, the defendant did not elect to stand upon the terms of his contract and pay Donalson the note due a few days thereafter, on January 1, 1913, nor did he pay or ·offer to pay Donalson the note due January 1, 1914. Had the defendant declined to permit the plaintiff to repudiate orally the contract to buy the land as he had the right to do, and had proceeded to carry out the contract which he had made with Donalson on behalf of the plaintiff, he would have been in position to compel Copeland to take the premises which he had purchased for him, or at least could have recovered the money expended as his agent by his direction. However, it so plainly appears from the answer that when the plaintiff notified the defendant that he was not going to take the property, the defendant tacitly acquiesced in the breach of the contract upon which he had the right to stand, that for this reason, if for no other, his counter-claim for the rent is a matter of tort, which can not be recouped in an action upon an entirely different contract.

Likewise, for the reason that the damages, if any, resulting from the loss in the sale of the mule described in the mortgage note, as alleged, were also consequent upon the plaintiff's tort in violating his agreement as to the house and lot, which· was subsequent to and independent of the contract evidenced by the note, this item of damage could not be set off by way of recoupment to the plaintiff's action. Generally recoupment is not available except where

the plaintiff himself seeks to recover damages. "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." Civil Code, § 4350. In actions ex contractu recoupment may be pleaded where for any reason the plaintiff under the same contract is in good conscience liable to the defendant (Civil Code, § 4353), but, as we have pointed out, the code confines the right to recoup in actions ex contractu to damages arising under the same contract. The original contract to pay $129.60 at the Citizens Bank of Cairo, on September 2, 1912, for the purchase-money of a certain mule, entered into on September 2, 1911, was an entirely different contract from a contract to turn over that note and a certain amount of money in consideration of a house and lot.

3. In view of the error hereinbefore pointed out, the further proceedings in the trial were nugatory, and no ruling is required upon the assignments of error contained in the motion for a new trial. *Judgment reversed.*